Alan E. Wisotsky (SBN 68051)
James N. Procter II (SBN 96589)
Jeffrey Held (SBN 106991)
WISOTSKY, PROCTER & SHYER
300 Esplanade Drive, Suite 1500
Oxnard, California 93036
Tel: (805) 278-0920
Fax: (805) 278-0289
E-mail: jheld@wps-law.net

Attorneys for Defendants COUNTY OF VENTURA,
VENTURA COUNTY SHERIFF'S OFFICE,
GEOFF DEAN, HARRY LAUBACHER, and
PABLO RODRIGUEZ *[erroneously sued and served
as P. Rodriguez]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELODIE KLEIMAN, | No. CV12-05979 R (SHx) |
| Plaintiff, | |
| v. | **UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |
| COUNTY OF VENTURA, a municipal corporation; VENTURA COUNTY SHERIFF'S OFFICE, a public entity; GEOFF DEAN, individually and in his capacity as Sheriff of the Ventura County Sheriff's Office; HARRY LAUBACHER, individually and in his capacity as a Deputy Sheriff of the Ventura County Sheriff's Office; P. RODRIGUEZ, individually and in his capacity as a Deputy Sheriff of the Ventura County Sheriff's Office; and DOES 1 through 50, inclusive, | |
| Defendants. | |

The Honorable Manuel L. Real, United States District Judge, having read and considered the evidence submitted in support of the defendants' summary judgment motion found at website docket entry 18, and having viewed the video submitted by the defendants as Exhibit D, website entry 20, and having considered plaintiff's

papers in opposition to the motion, website docket entry 26, hereby finds the following facts to be uncontrovertedly established:

1. Sheriff Dean was not involved in plaintiff's eviction or the deputies' contact with her.

2. Ross Bonfiglio, a captain with the Ventura County Sheriff's Office assigned to the Professional Standards Unit, is knowledgeable concerning deputies' personnel files, discipline, and departmental policies.

3. There have been no complaints, no internal affairs investigations of any type of misconduct (including excessive force), and no imposition of discipline regarding defendant deputies Laubacher and Rodriguez within the last decade.

4. Other than an investigated and exonerated complaint not involving force, non-party deputy Marciano Sabio has not had any personnel complaints or discipline during the past decade.

5. At the time of the incident forming the basis of this lawsuit, the Ventura County Sheriff's Office's use of force policy was contained in General Order 07-12-12-06, 12 pages in length.

6. The Sheriff's use of force policy was identified as a "red" general order. The Sheriff's Office used a three-color system for prioritization purposes, with red signifying the most critical policies.

7. The Ventura County Sheriff's Office facilitated the distribution of the general order regarding use of force by computer availability and annual review acknowledgment.

8. Deputies employed by the Ventura County Sheriff's Office also received periodic retraining in arrest and control procedures every two years. Each of the three involved deputies had had that training relatively recently before their contact with the plaintiff.

/ / /

/ / /

9. The use of force policy in effect at the time of the contact with the plaintiff contained numerous limitations on the use of force in an attempt to create the least use of force necessary to bring an incident under control.

10. The declaration of police practices expert Greg Meyer refutes the allegations of paragraph 13 of the complaint alleging negligent selection and hiring, in that the Sheriff's Office is a professional law enforcement agency in compliance with the mandates of POST, the California Peace Officer Standards and Training Commission.

11. The training records of the three involved deputies were compliant with POST requirements.

12. Deputy Laubacher told the plaintiff that she would not be allowed to enter the home from which she was being evicted.

13. There was a Ventura Superior Court order (a Writ of Possession) restoring ownership of the subject premises to Ventura County Real Estate, LLC, the plaintiff in the Ventura Superior Court civil lawsuit which was the subject of this eviction action.

14. The plaintiff was given nine days' notice by Deputy Laubacher's posting of the Notice to Vacate the Premises on the front door of the home then being occupied by the plaintiff.

15. Plaintiff was adamant, throughout the contact with the deputies, in her insistence that the eviction was flawed and that she was not going to be removed from that property.

16. Deputy Laubacher instructed Deputy Rodriguez to post the Eviction Restoration Notice on the front door of the residence, formally restoring possession of the property to the plaintiff in the Superior Court action.

17. Declarations of the three deputies and police practices expert Greg Meyer established that evicting a person from a residence triggers deep resentment. Allowing a person insistent upon holding over to reenter the home carries a high

3

danger potential, such as access to weapons and confederates, barricading, self-harm, damaging the premises in retribution, and danger to the deputies, who would then have to remove the former homeowner from a residence with whose interior configuration they were unfamiliar.

18. Deputy Laubacher used his body to block the plaintiff as she attempted to sidestep him, walk down the side yard, and reenter the residence through the rear door.

19. The video shows Deputy Laubacher having no role in handcuffing the plaintiff. Other than minimal contact with seating her in a chair on the driveway, Deputy Laubacher had no physical contact with the plaintiff.

20. As plaintiff attempted to sidestep Deputy Laubacher to walk down the side yard of the residence, she shoved him in the chest.

21. In response to the plaintiff's shoving Deputy Laubacher in the chest, deputies Rodriguez and Sabio handcuffed her.

22. The deputies seated the plaintiff in a chair on the driveway in an effort to immobilize her and, approximately 30 seconds later, they handcuffed her.

23. The deputies carrying out the plaintiff's eviction did nothing violent toward her. Contrary to the allegations of paragraph 23 of the complaint, none of the deputies yanked, pulled, or twisted her left arm or either arm, nor did any of the deputies lean forward a second time after her handcuffs were initially secured; therefore, the deputies could not have and did not re-tighten the handcuffs or yank them.

24. The audio-video recording of the deputies' involvement with the plaintiff accurately depicts their interactions with the plaintiff and disproves any improper behavior by the deputies while corroborating the plaintiff's frenzied resistance throughout the contact with the deputies.

/ / /

/ / /

4

# CONCLUSIONS OF LAW

Based upon the evidentiary exhibits submitted in support of the summary judgment motion, not effectively contradicted by the plaintiff's opposition, the Court draws the following conclusions of law:

1. Sheriff Geoff Dean should be dismissed with prejudice because he had no personal involvement with the plaintiff or with the circumstances of the case. His inclusion is unnecessary because of the naming of the two entity defendants.

2. The Ventura County Sheriff's Office and the County of Ventura should be dismissed with prejudice because there is no evidence of a deliberately indifferent custom, practice, or policy directly leading to the deprivation of plaintiff's federally protected rights, as required by *Monell* and its progeny.

3. The deputies did not violate the plaintiff's constitutional rights by evicting her from the premises at 355 La Salle Avenue in Ventura, California, as they possessed a court order, a writ of possession, to restore the property to the prevailing plaintiff in the Ventura Superior Court civil lawsuit, Ventura County Real Estate, LLC.

4. The deputies possess qualified immunity for their participation in the eviction process of the plaintiff.

5. The deputies did not violate the plaintiff's constitutional rights by prohibiting her from reentering the residence from which she was being evicted due to the dangers associated with allowing an individual who adamantly claims the right to remain in the premises to reenter the residence, such as barricading, access to a weapon, and harming herself or others, combined with a greater danger associated with extracting such an individual from the home once she reenters.

6. The deputies have qualified immunity for preventing the plaintiff from reentering the residence from which she was being evicted.

7. The deputies' totality of actions, as seen in the video taken by Dan Morelli, and as corroborated by his deposition testimony as well as the declarations of

each of the three deputies, consisted of blocking her effort to walk past Deputy Laubacher by using his physical presence, instructing her not to reenter the residence, seating her in a chair on the front driveway, and placing handcuffs around her wrists after they placed her arms behind her back. The audio and its video conclusively demonstrate that the plaintiff was hostile, screaming obscenities and threats at the deputies, and that the deputies never did any of the actions constituting excessive force alleged in paragraph 23 of the complaint. The deputies did not yank, pull, or twist plaintiff's left arm, or either arm. The deputies did not lean forward a second time to manipulate the handcuffs. The deputies did not use any violent force against any part of plaintiff's body.

8. The deputies did not violate the plaintiff's federally protected rights in that they did not utilize any excessive force in their contact with the plaintiff.

9. The deputies' use of force was qualifiedly immune.

Dated: August 19, 2013

MANUEL L. REAL
United States District Judge